106 T.C. No. 6


UNITED STATES TAX COURT


ESTATE OF WILLIS EDWARD CLACK, DECEASED, MARSHALL &
ILSLEY TRUST COMPANY, CO-PERSONAL REPRESENTATIVE, AND
RICHARD E. CLACK, CO-PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12557-91.            Filed February 29, 1996.


     Decedent's will gave his surviving spouse an
income interest in certain marital trust property but
provided that if decedent's coexecutors did not elect
to treat the property as "qualified terminable interest
property" (QTIP) within the meaning of sec. 2056(b)(7),
I.R.C., such property would instead be administered
under the terms of a nonmarital family trust.
     <u>Held</u>:  The marital trust property is QTIP within
the meaning of sec. 2056(b)(7), I.R.C.  This Court's
opinions in <u>Estate of Robertson v. Commissioner</u>, 98
T.C. 678 (1992), revd. 15 F.3d 779 (8th Cir. 1994);
<u>Estate of Clayton v. Commissioner</u>, 97 T.C. 327 (1991),
revd. 976 F.2d 1486 (5th Cir. 1992); and <u>Estate of
Spencer v. Commissioner</u>, T.C. Memo. 1992-579, revd. 43
F.3d 226 (6th Cir. 1995), are no longer followed.


<u>Robert L. Kamholz, Jr.</u>, and <u>John M. Byers</u>, for petitioner.

Michael J. Calabrese, for respondent.


WELLS, Judge:* Respondent determined a deficiency of $2,284,008 in the Federal estate tax of the Estate of Willis Edward Clack (estate). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect on the date of death of Willis Edward Clack (decedent), and all Rule references are to the Tax Court Rules of Practice and Procedure. The issue to be decided in this Opinion is whether the interest of decedent's surviving spouse in certain marital trust property is "qualified terminable interest property" (QTIP) within the meaning of section 2056(b)(7), where the passage to the surviving spouse of the interest in the property is contingent upon the coexecutors' QTIP election as to the property.[1]

FINDINGS OF FACT

Some of the facts were stipulated for trial pursuant to Rule 91. The parties' stipulations are incorporated into this Opinion by reference and are found accordingly.

---

*

This case was reassigned to Judge Thomas B. Wells by Order of the Chief Judge.

[1]

If the interest in such property is QTIP, then an additional issue must be decided, to wit, whether the estate, inheritance, and any other succession taxes are to be paid from the assets passing into the marital trust or from the stock bequeathed to decedent's son. This additional issue will be decided by a separate opinion subsequently to be released.

Decedent was born on July 21, 1923, and died testate on July 1, 1987, in Madison, Wisconsin. At the time of his death, decedent was a resident of Benton County, Arkansas. On August 4, 1987, the Benton County Probate Court admitted to probate decedent's last will, dated August 27, 1986 (the will), and issued letters testamentary to Richard E. Clack and the Marshall & Ilsley Trust Co., authorizing them to act as coexecutors of decedent's estate.[2] At that time and at the time of filing the petition in the instant case, the Marshall & Ilsley Trust Co. maintained its principal place of business in the State of Wisconsin, and Richard E. Clack was a resident of the State of Wisconsin.

Decedent was survived by his wife, Alice Clack, his sons, Richard E. Clack and Robert A. Clack, and his daughter, Ann Clack Klimnowicz. During his lifetime, decedent was the owner and operator of a successful plastic extrusion company, Clack Corp. located in Winsor, Wisconsin. At the time decedent executed his will, his sons were active in the company. Richard E. Clack was "the number two person in the company". Robert A. Clack had just started working in the business.

Decedent consulted an attorney in Wisconsin about preparing a will. Decedent was concerned about keeping the control of

---

[2]

The terms "coexecutors" and "co-personal representatives" are used interchangeably in this case.

Clack Corp. in the family.  Although decedent wanted his son Robert A. Clack to remain with the company, he wanted his other son Richard E. Clack to have control of the company.  Decedent also wanted to minimize his estate taxes and to provide for his wife.

Decedent executed his will on August 27, 1986.  The will names decedent's son Richard E. Clack and the Marshall & Ilsley Trust Co. of Milwaukee, Wisconsin, as co-personal representatives of his estate and cotrustees of the trusts created by the will.

Article I of the will provides for the payment of expenses (paragraph A) and taxes (paragraph B) from the residuary estate. Article II of the will bequeaths to decedent's wife all of decedent's personal effects and his interest in his personal residence.  Article III of the will bequeaths to decedent's son Richard E. Clack 12,689 shares of the common stock of Clack Corp. Such bequest was made to recognize Richard E. Clack's activities in the management and success of Clack Corp. and was intended to ensure that Richard E. Clack retained control of Clack Corp.

Article IV of the will creates a marital trust for the benefit of decedent's wife as follows:

> Qualified Terminable Interest Property Marital Trust.  If my wife survives me, I give to my Trustee the minimum pecuniary amount which will qualify for the federal estate tax marital deduction and which will result in the smallest federal estate tax being payable by reason of my death.  In computing this amount, my Personal Representative shall take into account the unified credit and the credit for state death taxes and deduction (except the marital deduction) available to

my estate and all other items included in my gross estate for federal estate tax purposes, whether or not passing under this Will, which qualify for said deduction.  My Personal Representative shall assume that all payments and legacies under the preceding Articles of this Will have been fully satisfied and shall take into account the state death tax credit only to the extent that use of the credit does not require an increase in state death taxes payable.  I recognize that, depending upon the size of my estate, the year of my death and other factors, no amount may pass to this Marital Trust.

Article IV, paragraph C of the will states:

It is my intention that this bequest shall qualify for the federal estate tax marital deduction to the extent that my Personal Representative elects that any part or all of any amount passing under this Article IV be treated as qualified terminable interest property, and the terms of this Will shall be construed in accordance with such intent.  My wife may require my Trustee to convert unproductive property into productive property within a reasonable time.

The will requires the trustee to pay the net income of the marital trust to decedent's wife "in convenient installments at least quarterly".  Any undistributed and accrued income at the time of the death of decedent's wife is to be paid to the wife's estate.  The trustee is empowered to invade the principal of the marital trust as deemed necessary to provide for decedent's wife in order that she may maintain her standard of living.  The marital trust terminates upon the death of decedent's wife.  Upon termination of the marital trust, any assets remaining after payment of estate, inheritance, and succession taxes arising from the surviving spouse's death are to be added to the family trust created under Article V of the will (discussed below).

Article IV, paragraph D of the will provides for spousal disclaimer rights as follows:

> My wife or her personal representative, by an instrument in writing delivered to my Trustee after my death, may disclaim all or any part of the distribution payable under this Article IV to the Trustee of the Qualified Terminable Interest Property Marital Trust under Paragraph B. Any part so disclaimed shall be held and administered by the Trustee as a separate trust in accordance with the terms of the Family Trust, except my wife shall not receive distributions of principal from this separate trust. If my wife further disclaims her income interest in this separate trust, then it shall be held and administered in accordance with the terms of the Family Trust as if she had predeceased me. Upon my wife's death, any assets segregated pursuant to the terms of this Paragraph shall be merged with other assets being held in the Family Trust.

Article IV, paragraph F of the will provides for an election as follows:

> My Personal Representative may elect that any part or all of any amount passing under this Article IV be treated as qualified terminable interest property for the purpose of qualifying for the marital deduction allowable in determining the federal estate tax upon my estate. While I anticipate that the election will be made for all of such property, my Personal Representative shall have the authority not to make the election should no election or a partial election be advantageous for some reason I have not foreseen. Any part of any amount passing under this Article IV with respect to which my Personal Representative does not so elect to be treated as qualified terminable interest property shall continue to be held by my Trustee and administered and distributed pursuant to the terms of the Family Trust hereunder.

Article V of the will provides for "Family Trust Administration", in which the trustee is to receive the residue of decedent's estate in order to fund the family trust.

Decedent's wife, children, and the issue of any deceased children constitute the beneficiaries of the family trust. The trustee has sole discretion to distribute income and principal to any one or more of the beneficiaries. Any income not distributed to the beneficiaries is to be added to the principal of the family trust.

Article IX, paragraph A of the will provides that the personal representative "may make such elections under the tax laws applicable to my estate as it determines should be made."

On April 1, 1988, a U.S. Estate Tax Return, Form 706, was timely filed for the estate with the Internal Revenue Service Center in Austin, Texas. On the estate tax return, the coexecutors made the election under section 2056(b)(7) for the entire marital trust amount, which they valued at $4,162,439.24. The marital trust amount was computed as follows:

| | | |
|---|---|---:|
| Probate estate | | $6,685,474.21 |
| Add: Profit sharing plan benefit[1] | | 320,327.89 |
| Total | | 7,005,802.10 |
| | | |
| Less: | Funeral expenses | (3,973.00) |
| | Administration expenses | (338,849.06) |
| | Debts | (20,811.95) |
| | Mortgages & liens | (1,365.85) |
| Less: | Specific bequest to spouse | (42,075.00) |
| | Specific bequest to son | (2,436,288.00) |
| Net amount to marital trust | | 4,162,439.24 |

[1]The trustees of the marital trust were named as the beneficiaries of the Clack Corp. Profit Sharing Plan.

Thus, the coexecutors treated the payment of expenses under Article I, paragraph A of the will, the bequests of tangible

personal property and of the interest in the home to the surviving spouse under Article II, and the bequest of the Clack Corp. stock to Richard E. Clack under Article III as having been fully satisfied before determining the marital trust amount but did not treat the payment of estate taxes under Article I, paragraph B as having been fully satisfied.

The coexecutors claimed a total marital deduction in the amount of $4,460,101.18, composed of what they determined to be the value of the marital trust property ($4,162,439.24), plus certain joint property ($194,263.55), the bequest of tangible personal property and the interest in the home ($42,075), life insurance proceeds ($46,481.72), and retirement benefits ($14,841.67) passing to the surviving spouse. Other than the specific bequest of Clack Corp. stock to Richard E. Clack and a payment of $25,953.51 to Robert A. Clack as the beneficiary of a single premium annuity policy, all of the assets of decedent's estate either passed directly to the surviving spouse ($297,661.94 by specific bequest or outside of probate) or were treated by the coexecutors as part of the marital trust ($4,162,439.24 as QTIP election). The coexecutors did not fund the family trust.

On the estate tax return, the total gross estate was valued at $7,287,342.55. The estate tax reported as due on the return was $684,589.11.

On November 10, 1988, the Internal Revenue Service (IRS) selected the estate tax return for audit. In January of 1989, the coexecutors and the IRS agreed that the value of each share of the Clack Corp. stock was $10 more than reported on the estate tax return. At the time of his death, decedent owned 24,675 shares of Clack Corp. stock, of which 12,689 shares were bequeathed to Richard E. Clack. The remaining 11,986 shares were treated by the coexecutors as part of the marital trust.

On March 28, 1991, respondent issued a statutory notice of deficiency to the estate, determining an estate tax deficiency of $2,284,008. The principal adjustment was the disallowance of $4,162,439.24 of the marital deduction because of respondent's determination that the "spouse's entire interest in the marital trust was subject to a power in the executors to appoint the corpus to someone other than the surviving spouse."

## OPINION

Section 2001 imposes a tax on the transfer of the taxable estate of any person who is a citizen or resident of the United States at the time of death. Section 2056(a) allows a marital deduction from a decedent's gross estate for the value of property interests passing from the decedent to the decedent's surviving spouse. As a general rule, however, a marital deduction is denied for a "terminable interest", that is, a property interest that will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur". Sec. 2056(b)(1).

Accordingly, an interest in the nature of a life estate, generally, is ineligible for the marital deduction. See Estate of Nicholson v. Commissioner, 94 T.C. 666, 671 (1990); Estate of Higgins v. Commissioner, 91 T.C. 61, 66 (1988), affd. 897 F.2d 856 (6th Cir. 1990). However, section 2056(b)(7),[3] added by the

---

[3]

Sec. 2056(b)(7) provides:

(A) IN GENERAL.--In the case of qualified terminable interest property--
(i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and
(ii) for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.
(B) Qualified terminable interest property defined.--For purposes of this paragraph--
(i) IN GENERAL.--The term "qualified terminable interest property" means property--
(I) which passes from the decedent,
(II) in which the surviving spouse has a qualifying income interest for life, and
(III) to which an election under this paragraph applies.
(ii) Qualifying income interest for life.--
The surviving spouse has a qualifying income interest for life if--
(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and
(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.
Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interest in property (regardless of whether the property from which the annuity is payable can be separately identified).
(iii) Property includes interest therein.--The term "property" includes an interest in property.
(iv) Specific portion treated as separate property.--A specific portion of property shall be treated as separate property.
(continued...)

Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 403(d), 95 Stat. 172, 302, allows a marital deduction for "qualified terminable interest property".  Section 2056(b)(7) allows a decedent to pass to the decedent's surviving spouse an interest in property for the surviving spouse's lifetime without the decedent's losing the ability to control the disposition of such property upon the death of the surviving spouse.

The facts in the instant case fall within this Court's holding in Estate of Clayton v. Commissioner, 97 T.C. 327 (1991), revd. 976 F.2d 1486 (5th Cir. 1992).  After our opinion in Estate of Clayton was issued, but before it was reversed by the Fifth Circuit, we decided Estate of Robertson v. Commissioner, 98 T.C. 678 (1992), revd. 15 F.3d 779 (8th Cir. 1994), and Estate of Spencer v. Commissioner, T.C. Memo. 1992-579, revd. 43 F.3d 226 (6th Cir. 1995), in both of which we followed our holding in Estate of Clayton.  Subsequently, those decisions were reversed, first by the Fifth Circuit, which reversed our decision in Estate of Clayton v. Commissioner, supra, then by the Eighth Circuit, which, following the Fifth Circuit, reversed our decision in Estate of Robertson v. Commissioner, supra, and finally by the

(...continued)
    (v) Election.--An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001.  Such an election, once made, shall be irrevocable.

Sixth Circuit, which reversed our decision in Estate of Spencer v. Commissioner, supra. The Sixth Circuit, however, applied a rationale somewhat different from that applied by the Fifth Circuit.

The Tax Court, in those opinions, held that the surviving spouse did not have a qualifying income interest for life because the passage of an income interest in the property to the surviving spouse was contingent upon the executor's QTIP election as to such property and was therefore subject to the executor's power to appoint the property to someone other than the surviving spouse. Accordingly, the Tax Court concluded that the property did not meet the requirements of section 2056(b)(7)(B)(ii)(II), that the surviving spouse did not have a "qualifying income interest for life", and that the property therefore was not QTIP. Estate of Robertson v. Commissioner, supra; Estate of Clayton v. Commissioner, supra; Estate of Spencer v. Commissioner, supra.

In Estate of Clayton v. Commissioner, supra, the taxpayer argued that, by definition, an interest in property is QTIP only if the election is made, and that, once the election is made, the surviving spouse has a qualifying income interest for life, effective as of the date of the decedent's death. In response, we stated:

> An election, by definition, is necessary to insure that the property is qualified terminable interest property. The essence of section 2056(b)(7)(B)(i), however, is that a terminable interest is deductible only if it is an interest in property "in which the

surviving spouse has a qualifying income interest for
life"; if so, then an applicable election may be made
with respect to such property.  Compare Estate of
Tompkins v. Commissioner, 68 T.C. 912 (1977).  Whether
the surviving spouse has an income interest for life in
the property is independent of, and not dependent upon,
the requirement that an election be made with respect
to that property.  If the surviving spouse does not
have an income interest for life in the trust, then the
election to treat the trust as a QTIP trust is
ineffective. [Id. at 337.]

In Estate of Robertson v. Commissioner, supra at 689, the

taxpayer attempted to distinguish the facts of that case from

those of Estate of Clayton.  In Estate of Robertson, the taxpayer

argued that the executor was required to make the QTIP election

and, thus, did not have the power to appoint the property to

anyone other than the surviving spouse.  We held to the contrary,

concluding that the executor had the power to appoint the

property to someone other than the surviving spouse and that

Estate of Clayton was controlling.

Preliminarily, this Court stated:

Section 2056(b)(7)(B)(i) defines "qualified
terminable interest property" as property (1) which
passes from the decedent, (2) in which the surviving
spouse has a "qualifying income interest for life", and
(3) for which an election has been made. [Estate of
Robertson v. Commissioner, supra at 684; emphasis
added; fn. ref. omitted.[4]]

---

[4]

Item (3) in the above quotation, however, is an imprecise
paraphrase of and not the actual statutory language used in sec.
2056(b)(7)(B)(i)(III).  In Estate of Robertson v. Commissioner,
98 T.C. 678 (1992), revd. 15 F.3d 779 (8th Cir. 1994), this Court
addressed sec. 2056(b)(7)(B)(i)(II), the "qualifying income
interest for life" requirement, and did not undertake to construe
(continued...)

In reversing this Court, the appellate courts focused upon that language and held that one of the three essential elements in the definition of QTIP is that it be property for which an election has been made. Estate of Spencer v. Commissioner, 43 F.3d at 231; Estate of Robertson v. Commissioner, 15 F.3d at 783; Estate of Clayton v. Commissioner, 976 F.2d at 1499.

The opinions of the Courts of Appeals, however, diverge in one respect. The Court of Appeals for the Fifth Circuit held that the effect of the QTIP election is retroactive to the instant of the decedent's death. Estate of Clayton v. Commissioner, 976 F.2d at 1495, 1500. The Court of Appeals for the Sixth Circuit rejected what it characterized as the legal fiction of retroactivity created by the Fifth Circuit. Estate of Spencer v. Commissioner, 43 F.3d at 234. Instead, the Sixth Circuit held that the date for determining whether property qualifies for the QTIP election is the date the QTIP election is made. Id. at 232. In holding that the relevant date for the determination is the date the QTIP election is made, the Sixth Circuit rejected the Commissioner's argument that Jackson v. United States, 376 U.S. 503 (1964), requires a contrary holding. The Sixth Circuit stated:

> Jackson is readily distinguishable from this case
> and not in point. In Jackson, after her husband's
> death, a widow received a court-ordered temporary

---

(...continued)
sec. 2056(b)(7)(B)(i)(III), the election requirement.

allowance for her support and maintenance payable from his estate. The Supreme Court held that because the widow's allowance arose from a right under state law which had not vested in her as of her husband's date of death, it could not be included as part of the marital deduction because it did not meet the definition of any counter-exception to the rule that terminable interests are to be included in the taxable estate. Jackson at 507, 84 S.Ct. at 871-72. In the instant case, the decedent used an estate planning device unknown when Jackson was decided--the QTIP counter-exception to the terminable interest rule. Because the Jackson court ruled on the proper determination date for an interest which is not an exception to the terminal interest rule, and not subject to a later election, we do not think it is dispositive of this issue. [Estate of Spencer v. Commissioner, 43 F.3d at 231.]

Petitioner argues that, because at the time of his death decedent was a resident of the State of Arkansas, the Eighth Circuit would have venue for an appeal of the instant case (absent stipulation to the contrary). Accordingly, petitioner contends that, pursuant to Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), the Eighth Circuit's decision in Estate of Robertson v. Commissioner, supra, is controlling and that we should therefore hold for petitioner. Respondent argues that, because at the time of filing the petition in the instant case the individual co-executor of decedent's estate was a resident of the State of Wisconsin and the corporate co-executor had its principal place of business in that State, venue for an appeal of the instant case would lie to the Court of Appeals for the Seventh Circuit, which has not addressed the QTIP issue presented in the instant case, and,

consequently, that the Tax Court is not bound under the Golsen rule.

The Golsen rule requires a conflict between this Court and the court having venue over an appeal of the case sub judice. Because we decide in the instant case to accede to the decisions of the Courts of Appeals that have reversed our decisions on the issue before us, no such conflict exists, and therefore it is unnecessary to address the parties' arguments concerning the proper venue for an appeal of the instant case.

We also find it unnecessary, at this point, to winnow out the differences in our analyses in our prior cases and those of the Courts of Appeals that have reversed us.  Finally, we see no reason in the instant case to adopt either the rationale of the Fifth and Eighth Circuits, on the one hand, or of the Sixth Circuit, on the other, as in either case the result is the same: the marital deduction is allowed.  Suffice it to say that, in light of the reversals of this Court's decisions by three different circuits, we now decide that we will accede to the result in those appellate decisions and will no longer disallow the marital deduction for interests that are contingent upon the executor's election under section 2056(b)(7)(B)(v), where the election is actually made under facts similar to those in the instant case.  Accordingly, we hold that the marital trust property in the instant case qualifies as QTIP under section 2056(b)(7).

One caveat to our holding is in order. Section 20.2056(b)-7(d)(3), Estate Tax Regs.,[5] provides that the marital deduction is not available under the circumstances of the instant case. Because the regulation is effective for estates of decedents dying after March 1, 1994 (see section 20.2056(b)-10, Estate Tax Regs.), it is not applicable to the instant case. Consequently, we leave for another day the issue of the validity of that regulation. Obviously, if the regulation were held to be valid, there might be a different result for estates of decedents dying after March 1, 1994.

To reflect the foregoing,

An appropriate order

will be issued.

Reviewed by the Court.

HAMBLEN, SWIFT, JACOBS, WRIGHT, RUWE, COLVIN, LARO, FOLEY, and VASQUEZ, JJ., agree with this majority opinion.

---

[5] Sec. 20.2056(b)-7(d)(3), Estate Tax Regs., provides as follows:

> (3) Contingent income interests. An income interest granted for a term of years, or a life estate subject to termination upon the occurrence of a specified event (e.g., remarriage), is not a qualifying income interest for life. In addition, an income interest (or life estate) that is contingent upon the executor's election under section 2056(b)(7)(B)(v) is not a qualifying income interest for life, regardless of whether the election is actually made.

CHABOT, J., concurring in the result: I do not agree with the majority's determination to overrule this Court's opinions in Estate of Robertson v. Commissioner, 98 T.C. 678 (1992), revd. 15 F.3d 779 (8th Cir. 1994); Estate of Clayton v. Commissioner, 97 T.C. 327 (1991), revd. 976 F.2d 1486 (5th Cir. 1992); and Estate of Spencer v. Commissioner, T.C. Memo. 1992-579, revd. 43 F.3d 226 (6th Cir. 1995). See generally Part I (QTIP Issue) of Judge Parker's dissent, and Judge Halpern's dissent.

However, for the reasons set forth in Judge Gerber's concurrence, I would hold that venue for an appeal would be in the Court of Appeals for the Eighth Circuit. Under the Golsen rule, we would be bound to follow the interpretation of that Court of Appeals. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Because the Golsen rule leads to the same result that the majority reach in the instant case, I concur in the result.

SWIFT, J., concurring:  I do not disagree with the decision of the majority to accede to the rulings of the three Courts of Appeals that have considered this issue.  In light, however, of respondent's self-serving, interpretative, prospective-only regulation on this issue at section 20.2056(b)-7(d)(3), Estate Tax Regs. (promulgated in the midst of the rejection of respondent's position by the Courts of Appeals for the Fifth, Sixth, and Eighth Circuits[1]), and in light of the many refund courts that are not bound by our ruling herein, nor by the rulings of the above three Courts of Appeals, further litigation of this issue would appear inevitable.

As an alternative, therefore, to acceding to the extant rulings of the Courts of Appeals, I would go further, and I would reconsider our interpretation of the relevant QTIP provisions of section 2056(b)(7)(B), as follows.

Having the benefit of the analyses set forth in the above three Courts of Appeals rulings and the benefit of further reflection that continuing litigation provides, I believe that we erred in our prior opinions in Estate of Clayton v. Commissioner, 97 T.C. 327 (1991), revd. 976 F.2d 1486 (5th Cir. 1992); Estate of Robertson v. Commissioner, 98 T.C. 678 (1992), revd. 15 F.3d 779 (8th Cir. 1994); and Estate of Spencer v. Commissioner, T.C.

---

[1]    See T.D. 8522, 1994-1 C.B. 236, 238, promulgated on Feb. 28, 1994, effective with respect to estates of decedents dying after Mar. 1, 1994.

Memo. 1992-579, revd. 43 F.3d 226 (6th Cir. 1995), and I would so hold.

Section 2056(b)(7)(B)(i) provides three general definitional requirements that must be satisfied in order to qualify property as QTIP property.  Arguably, the first two (namely, whether property passed "from" the decedent and whether the surviving spouse "has" a qualifying income interest for life) could be determined on the date of decedent's death.

However, the third requirement (namely, whether the QTIP election has been made) obviously cannot be determined until the estate tax return is filed.  On that date, one can also determine whether the first two requirements have been satisfied.  It therefore seems logical to me to determine whether all three requirements of section 2056(b)(7)(B)(i) have been satisfied on the date the estate tax return is filed.  That is the earliest date on which one could possibly determine whether all three requirements have been satisfied.  Accordingly, that date ought to be used to determine whether each of the three requirements has been satisfied.

In contrast to the technical arguments and hypothetical situations that are being made and raised on this issue, I agree with the refreshingly straightforward and commonsense approach of the Court of Appeals for the Sixth Circuit in Estate of Spencer v. Commissioner, supra.  Therein, the Court of Appeals explained as follows:

Congress deliberately crafted the broad language of section 2056(b)(7)(B)(v): "An election under [section 2056(b)(7)] with respect to **any property** shall be made by the executor on the return of tax imposed by section 2001." * * * [Emphasis supplied by the Court of Appeals.] Congress did not use the words "any existing qualified terminable interest property" or "any property meeting the above definition as of the date of decedent's death" or any similar limiting language, and we are not prepared to read such a limitation into this statute. The language "any property" should be given its ordinary meaning. Nowhere in the legislative history of section 2056(b)(7) do we find an indication that Congress intended a different reading of the statute. * * *

* * * * * * *

The words of the statute are plain: no property meets the definition of QTIP until the proper election is made, and no QTIP election can be made until the estate tax form is filed. Section 2056(b)(7)(B)(v). Since no property can be QTIP until the election is made, the proper date to determine if property satisfies the requirement of section 2056(b)(7) is on the date of the election.

* * * * * * *

Section 2056(b)(7) creates a new and different legislative scheme. Under the election provision, no property anywhere can be considered QTIP until an election is made by the executor on Form 706, which can only be done after the date of death. When the Commissioner's interpretation is carried to its logical extent, no property could ever satisfy the statutory definition of QTIP because the election for the surviving spouse cannot be made until after the date of decedent's death. This simple fact highlights the major problem with the Commissioner's interpretation of section 2056(b)(7).

* * * * * * *

The IRS would have us adopt an interpretation that would force property to satisfy every requirement for the QTIP counter-exception on the date of decedent's

death except the requirement of election.  This would effectively reduce the election requirement to a mere formality, defeat its apparent purpose and its most reasonable interpretation. * * *

     *     *     *     *     *     *     *

     This decision is in keeping with the overarching purpose of Congress to liberalize the requirements surrounding the marital deduction.  The 1981 amendments to section 2056 made a number of changes, each of which expanded the scope of the marital deduction.  In this spirit, we think an interpretation favoring the allowance of the deduction is in keeping with Congressional intent.  It recognizes that wills are often drafted long in advance of death and that family situations and the value of assets may change dramatically.  There is no reason to interpret section 2056(b)(7) to require that the will identify QTIP property long in advance of death and thereby deny taxpayers the full advantage of the marital deduction for QTIP property.  The election provision is plain enough and seems purposely worded to avoid this estate planning problem.  [43 F.3d at 230-233.]

In the QTIP definitional requirements of section 2056(b)(7)(B), because it is the first date on which the claimed QTIP property could possibly qualify under section 2056(b)(7)(B), the date on which the estate tax return is filed is the only directly relevant date.  If, on that date, all of the requirements have been satisfied (namely, the property passed from the decedent, the surviving spouse then has a qualifying income interest for life, and the election has been made on the return), the property should "be treated", see sec. 2056(b)(7)(A)(i), as fully meeting the definitional requirements of section 2056(b)(7)(B).

Based on the above analysis, I would overrule our prior opinions in <u>Estate of Clayton v. Commissioner</u>, <u>supra</u>, <u>Estate of Robertson v. Commissioner</u>, <u>supra</u>, and <u>Estate of Spencer v. Commissioner</u>, <u>supra</u>, and I would adopt the analysis set forth in the Court of Appeals for the Sixth Circuit's opinion in <u>Estate of Spencer v. Commissioner</u>, <u>supra</u>.

HAMBLEN and WHALEN, <u>JJ</u>., agree with this concurring opinion.

GERBER, J., concurring:  I agree with the majority's holding.  I am compelled, however, to write separately to address Judge Parker's dissenting view that appellate venue depends on the estate's representative's residence, rather than the domicile of the decedent.  The identity of the petitioner[1] in a case involving an estate is a question of some moment and one that this Court has not yet addressed with any particularity.

The dissenting opinion contains the view that an appeal in this case lies in the estate's representative's appellate venue (the Court of Appeals for the Seventh Circuit), and, therefore, we are not bound to follow the holding of the estate's appellate venue (the Court of Appeals for the Eighth Circuit).  Were it necessary to reach this question of first impression,[2] I believe the better view is that the estate is the petitioner, and, hence, under section 7482(b)(1)(A) venue for an appeal in this case would be in the place of the estate's probate and/or the

---

[1] Sec. 7482(b) prescribes that appellate venue will be in the Court of Appeals for the circuit in which the legal residence of the petitioner is located.

[2] The dissent's disagreement with the majority's rationale could have been expressed without discussing or relying on the effect of venue on any possible appeal.  Due to the majority's decision to no longer follow our prior position regarding the QTIP issue, this Court would be in agreement with all Courts of Appeals that have addressed this issue, and it would be unnecessary for us to consider whether it would be appropriate to follow the rule of a particular circuit.  See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

decedent's domicile at the time of death (the Court of Appeals for the Eighth Circuit).

The dissent expresses the belief that the estate's representative should be considered the petitioner.  As a matter of habit and practice, however, this Court most often refers to and treats a decedent's estate as the petitioner in an estate tax case.  See, e.g., Estate of Bond v. Commissioner, 104 T.C. 652 (1995); Estate of Robertson v. Commissioner, 98 T.C. 678, 679 (1992), revd. on another issue 15 F.3d 779 (8th Cir. 1994); Belcher v. Commissioner, 83 T.C. 227, 228 (1984); Estate of McElroy v. Commissioner, 82 T.C. 509, 510 (1984).  Consequently, the fiduciary is commonly referred to as the person by or through whom an estate acts.  See Rule 24(b).  Any claim that may be pursued is not personal to a fiduciary and is intrinsically part of the rights and assets that compose the estate, which exists for the benefit of its beneficiaries and creditors.

In addition, by choosing an estate's representative as the petitioner, the dissent would open the way for a profound and deleterious side effect--forum shopping.[3]  If the estate is treated as the petitioner, forum shopping is minimized because a decedent's domicile is fixed at death.  It is also significant that the law of the decedent's domicile governs an estate's

---

[3] The forum-shopping problem would be further exacerbated where an estate is represented by more than one fiduciary whose residences would offer the possibility of an appeal to different Courts of Appeals.

probate and provides for the representative's legal authority and requirements to serve the estate.  Similarly, it is the law of the State of the decedent's domicile that is determinative of whether a fiduciary has capacity to represent the estate in this Court.  Rule 60(c); Patz Trust v. Commissioner, 69 T.C. 497, 500 (1977); Fehrs v. Commissioner, 65 T.C. 346, 349 (1975).  It follows that a case dismissed for lack of jurisdiction because of the representative's incapacity under the domiciliary State law would logically proceed to the Court of Appeals serving the domiciliary State.

Systemically, it is more logical to treat the estate as the petitioner.  Notices of deficiency regarding an estate are concerned only with the estate's tax liability.[4]  See Estate of Tarver v. Commissioner, 26 T.C. 490, 498 (1956), affd. in part and revd. in part on another issue 255 F.2d 913 (4th Cir. 1958).  Appellate venue should, accordingly, be determined with reference to the estate and not its fiduciary.

The dissent compares the circumstances in this Court with those in Federal tort claims, Federal diversity jurisdiction, and

---

[4] Sec. 2203 defines the term "executor" for purposes of the Internal Revenue Code, and sec. 2204 provides for discharge of the fiduciary (executor) from personal liability if certain prescribed procedures are followed.  In that connection, sec. 301.6903-1(a), Proced. & Admin. Regs., requires that a fiduciary provide notice of the fiduciary's relationship to a district director.  The referenced procedural regulation also indicates that "the tax or liability is ordinarily not collectible from the personal estate of the fiduciary but is collectible from the estate of the taxpayer".

Federal tax refund cases.[5]  The dissent expresses the belief that the U.S. Courts of Appeals for the Seventh and Eighth Circuits would look to these cases and ascertain appellate venue based on the residence of the estate's representative.[6]

I respectfully disagree because for venue purposes:  (1) We are not dealing with refund, diversity jurisdiction, or tort claims; (2) we are not compelled to follow the rationale of refund, diversity, or Federal tort claims cases; and, significantly, (3) the dissent relies on the diversity cases despite Congress' having enacted legislation that effectively "overrules" them.

Concerning the weight to be afforded to diversity jurisdiction precedent, 28 U.S.C. sec. 1332 was amended in 1988 to ensure that the citizenship of represented parties will be determined according to the citizenship of the represented party--not the fiduciary.  134 Cong. Rec. 31051 (1988).  Congress was concerned with attorneys using out-of-State fiduciaries

---

[5] The Federal tax refund case Kruskal v. United States, 178 F.2d 738 (2d Cir. 1950), which is heavily relied on in the dissenting opinion, places central focus and substantial reliance on Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183 (1931), a case involving Federal diversity jurisdiction.  It is also noted that these cases are about 45 and 65 years old, respectively, and predate contemporary legislation and thinking on the subject of venue.

[6] The dissent, however, does not explain why following those principles would cause a better or more feasible result.

solely to create diversity of citizenship for access to the Federal courts.  Id. at 31055.

Furthermore, there are important differences in a court's focus with respect to questions of appellate venue versus questions of diversity of citizenship in order to qualify for Federal jurisdiction.  For diversity jurisdiction purposes, a representative's citizenship may be determinative of the threshold question of whether a party can have access to Federal courts.  Prior to the 1988 legislation, by acknowledging the representative's citizenship, courts could ensure that a Federal forum was available to an estate if the representative's citizenship was different from that of any other litigant.

The residence of a fiduciary for purposes of an appeal from this Court is not a threshold question that would otherwise be a prerequisite to Federal court access.  The focus of our inquiry involves which Court of Appeals is the most appropriate one to address an estate's appeal from this Court.[7]  In making this choice we must consider that circuit's nexus to the subject matter, the court's familiarity with local law of the decedent's domicile, and the general convenience to all parties.

---

[7] We are not in a position to dictate which Court of Appeals should review our opinions.  However, in the process of establishing a rule concerning the identity of the petitioner in our Court and interpreting the appellate venue statute, we should consider the potential procedural effect on the litigation process.

Concerning refund jurisdiction, 28 U.S.C. sections 1346 and 1402 (1994) fix trial court venue where the <u>plaintiff</u> resides. That also would fix venue for purposes of an appeal in a refund proceeding. In this Court, section 7482 provides that it is the <u>petitioner's</u> residence which governs appellate venue. The term "plaintiff" has been defined in refund case law to equate to the executor in a case involving an estate. Except for litigation cost recovery cases, the term "petitioner" has not been defined by this Court in the context of a case involving an estate unless only by way of analogy. See discussion <u>infra</u>.

The cases cited in the dissent to support the executor's designation as plaintiff in a refund proceeding treat the executor as the party in interest or, in one case, the responsible party. Although there are limited circumstances where the estate's representative may be held personally liable, the assets of an estate are the primary source for satisfaction of the estate's tax liability. Admittedly, an executor must represent the interests of the estate, but that alone, or in conjunction with the possibility that the executor may become personally liable, does not provide a persuasive reason to designate the executor as the "petitioner" in this Court. Even if the rationale of the refund cases cited by the dissent was soundly based, I find it no more persuasive than the reasons already expressed herein for the estate, rather than the executor, to be recognized as the petitioner.

Finally, the dissent's approach conflicts with our cases involving litigation costs. In <u>Estate of Hubberd v. Commissioner</u>, 99 T.C. 335, 338 (1992), we held that an estate is a party eligible to be awarded litigation costs. In doing so, we expressly recognized that

> "Common sense compels a finding that an estate is a 'party.' It is an entity which can be taxed, which can earn income (which is taxed), which can sue, and which can be sued. * * * In any event, <u>the real party in interest here is the estate</u> which, by way of its personal representative, is challenging the tax levied against it." [<u>Id.</u> (quoting <u>Boatmen's First Natl. Bank v. United States</u>, 723 F. Supp. 163, 169 (W.D. Mo. 1989)); emphasis added.]

The U.S. Court of Appeals for the Seventh Circuit recently adhered to this concept in <u>Estate of Woll by Woll v. United States</u>, 44 F.3d 464, 467-468 (7th Cir. 1994). In holding that an estate is a party eligible to recover attorney's fees, the court stated:

> Notably, the * * * [Equal Access to Justice Act] does not list estates among the parties eligible to recover litigation costs. However, <u>seeing no reason to treat estates differently from individuals</u>, the Tax Court, the Court of Claims, and at least two district courts have concluded that estates should be permitted to recover their costs despite statutory omission. * * * [<u>Id.</u> at 467 (citing <u>Estate of Hubberd v. Commissioner</u>, <u>supra</u> at 338-339); emphasis added.]

In the setting of a case in the U.S. Tax Court, the estate and the decedent are the focus of the proceeding. In that regard, it is likely that Courts of Appeals would treat the Court

of Appeals for the Eighth Circuit as the proper appellate venue under section 7482(b).

JACOBS, PARR, COLVIN, FOLEY, and VASQUEZ, <u>JJ</u>., agree with this concurring opinion.

BEGHE, J., concurring:  My first reaction to the case at hand was that this Court's prior views, as expressed in our opinions in Estate of Robertson v. Commissioner, 98 T.C. 678 (1992), revd. 15 F.3d 779 (8th Cir. 1994), Estate of Clayton v. Commissioner, 97 T.C. 327 (1991), revd. 976 F.2d 1486 (5th Cir. 1992), and Estate of Spencer v. Commissioner, T.C. Memo. 1992-579, revd. 43 F.3d 226 (6th Cir. 1995), have the better of the arguments on the literal interpretation of the statutory language.  I also had (and continue to have) reservations about the views, expressed by three Courts of Appeals, whose adoption would require us to invalidate section 20.2056(b)-7(d)(3), Estate Tax Regs., effective for estates of decedents dying after March 1, 1994.  Cf. Estate of Shelfer v. Commissioner, 103 T.C. 10, 28 n.6 (1994) (Beghe, J., dissenting).

On reflection, I think I see a principled justification for changing my position on the merits.  As explained in my dissent in Estate of Shelfer, QTIP is an exception to an exception that deserves a liberal construction.  103 T.C. at 26.  This is particularly so in the Clayton, Robertson, and Spencer situation, as in the case at hand, because there is no loophole.  Although I agree with Judge Parker that executors don't need the post mortem planning flexibility to choose who actually gets the property, dissenting op. p. 45, I don't think that should be our concern;

the QTIP election mechanism assures that the property will be included in the estate of one spouse or the other.[1]

Another question raised by the case at hand is whether, in the light of Central Pa. Sav. Association & Subs. v. Commissioner, 104 T.C. 384 (1995), we should have stuck to our guns in the face of reversal by three Courts of Appeals. One difference between the case at hand and Central is that in Central the Courts of Appeals upheld a regulation that we had held invalid. Here, the final regulation, which Judge Parker would uphold, dissenting op. p. 48--a question properly left open by the majority opinion--was published just before Estate of Robertson was reversed. Thus, the reversals in Estate of Robertson and Estate of Spencer were in the face of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-844 (1984). The Court of Appeals for the Sixth Circuit in Estate of Spencer v. Commissioner, 43 F.3d at 234, tried to defuse the Chevron argument by citing INS v. Cardoza-Fonseca, 480 U.S. 421 (1987), for the proposition that the Commissioner's

---

[1]See Covey, Estate, Gift and Income Taxation--1993 Developments, U. Miami 28th Inst. on Est. Plan. par. 117.1 (1994); id.--1994 Developments par. 116.1 (1995). Covey has warned will drafters of the danger of relying on the Court of Appeals for the Fifth Circuit's approach in Estate of Clayton v. Commissioner, 976 F.2d 1486 (5th Cir. 1992), revg. 97 T.C. 327 (1991). The warning still seems to be sound, particularly in view of the position taken in sec. 20.2056(b)-7(d)(3), Estate Tax Regs.

position is entitled to less deference because she has changed her position.[2]  See Priv. Ltr. Rul. 86-31-005 (Apr. 23, 1986). The courts have been inconsistent on this point.  See, e.g., <u>Bell Fed. Sav. & Loan Association v. Commissioner</u>, 40 F.3d 224, 229 (7th Cir. 1994) (citing <u>National Muffler Dealers Association v. United States</u>, 440 U.S. 472 (1979)), for an expression of the contrary view.[3]

Where I come out on all this is that the policy underlying the QTIP rules supports petitioner's position in the case at hand, there are reasonable interpretations of section 2056(b)(7)(B)(i) and (ii) that support petitioner's position, and the QTIP rules deserve a liberal interpretation that will uphold that position.  We properly leave to another day whether to uphold the Commissioner's regulation to the contrary, section 20.2056(b)-7(d)(3), Estate Tax Regs.  When we face that question, we should find it a much closer question under <u>Chevron</u>

---

[2]The use of private letter rulings in this fashion erodes the statutory prohibition of sec. 6110(j)(3) on the use or citation of private rulings as precedent.  I'm concerned that such use will have a stultifying effect on the private rulings process.

[3]The infrequency with which the Supreme Court has cited <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421 (1987), in recent years, especially for the changed-position doctrine, where the Court seems more likely to disregard it, see <u>Stutson v. United States</u>, ___ U.S. ___, 116 S. Ct. 600 (1996); <u>Lawrence v. Chater</u>, ___ U.S. ___, 116 S. Ct. 604 (1996); cf. <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. ___, ___, 114 S. Ct. 2381, 2388 (1994); <u>Good Samaritan Hosp. v. Shalala</u>, 508 U.S. 402, ___ (1993), 113 S. Ct. 2151, 2161 (1993), would seem to indicate that <u>Cardoza-Fonseca</u> is moribund, except, perhaps, in the immigration area that gave birth to it, see <u>Franklin v. INS</u>, 72 F.3d 571 (8th Cir. 1995); <u>Zhang v. Slattery</u>, 55 F.3d 732 (2d Cir. 1995).

than the Court of Appeals for the Fifth Circuit's opinion in

Clayton might lead one to believe.[4]

_____

[4]The Courts of Appeals--for the Fifth Circuit in Estate of Clayton, supra (before the release of the final regulation) and the Eighth Circuit in Estate of Robertson, 15 F.3d 779 (8th Cir. 1994), revg. 98 T.C. 678 (1992) (after its release)--found the Commissioner's position to be in violation of the plain language of the statute.  Acceptance of this view would derail the inquiry in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), from getting to the second step that requires deference to the Commissioner's view.  It's at this point that I part company from the position stated so categorically by the Court of Appeals for the Fifth Circuit.  The contrariety of judicial views on this subject shows that reasonable people can disagree over what the appropriate result should be and whether it turns on the interpretation to be given to one or the other prong of sec. 2056(b)(7)(i) and (ii) or on the policy argument.

PARKER, J., dissenting:  I think this Court was correct in its interpretation of section 2056(b)(7) and correctly held that the surviving spouse does not have a "qualifying income interest for life" where passage of such income interest in the property to the surviving spouse is contingent upon the executor's making the QTIP election as to such property and therefore subject to the executor's power to appoint the property to someone other than the surviving spouse.  Thus such property is not "qualified terminable interest property" even though the executor ultimately makes the QTIP election.  Accordingly, I think this Court should continue to follow its opinions in Estate of Clayton v. Commissioner, 97 T.C. 327 (1991), revd. 976 F.2d 1486 (5th Cir. 1992); Estate of Robertson v. Commissioner, 98 T.C. 678 (1992), revd. 15 F.3d 779 (8th Cir. 1994); and Estate of Spencer v. Commissioner, T.C. Memo. 1992-579, revd. 43 F.3d 226 (6th Cir. 1995).

However, I agree with petitioner that if an appeal in this case would lie to the U.S. Court of Appeals for the Eighth Circuit, this Court would be bound under the Golsen rule to follow the opinion of the Eighth Circuit in Estate of Robertson v. Commissioner, supra.  Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).  For that reason, I think this Court must address the venue issue, and under this Court's special venue statute I would conclude that any appeal in

this case would lie to the U.S. Court of Appeals for the Seventh Circuit, which has not yet spoken on this particular QTIP issue.

I
QTIP Issue

Section 2056(b)(7)(A) provides that for purposes of the marital deduction, in the case of "qualified terminable interest property", the entire property is treated as passing to the surviving spouse and no part of the property is treated as passing to any person other than the surviving spouse. Thus, for qualified terminable interest property, the decedent's estate may deduct as a marital deduction the value of the entire property, not just the surviving spouse's "qualifying income interest for life" in that property.

Section 2056(b)(7)(B) defines "qualified terminable interest property". Section 2056(b)(7)(B)(i) sets out the three general requirements--that it be property (1) which passes from the decedent, (2) in which the surviving spouse has a qualifying income interest for life, and (3) to which an election under this paragraph applies. Section 2056(b)(7)(B)(ii) then defines "qualifying income interest for life". Section 2056(b)(7)(B)(iii), (iv), and (v) sets out other definitions or requirements of qualified terminable interest property. I agree that all of section 2056(b)(7)(B) defines qualified terminable interest property and must be read as a whole. This Court in its Clayton-Robertson-Spencer opinions concluded, and I continue to think properly so, that the election provision of section

2056(b)(7)(B)(v), while a critical part of the definition of "qualified terminable interest property", is not part of the definition of "qualifying income interest for life" in section 2056(b)(7)(B)(ii). If Congress had intended the election by the executor to cure all other defects, I think it would have said so. While an election is necessary for QTIP, I think the election can only be made as to property in which the surviving spouse otherwise possesses a "qualifying income interest for life". The executor can elect whether or not the property in which the surviving spouse has a qualifying income interest for life is going to be taxable in the decedent's estate (no QTIP election) or deducted from his estate and later taxed in the surviving spouse's estate (QTIP election). An election under this paragraph cannot apply unless the property is otherwise qualifying; namely property passing from the decedent and property in which the surviving spouse has a qualifying income interest for life.

Section 2056(b)(7)(B)(ii) defines the term "qualifying income interest for life" as follows:

> (ii) Qualifying income interest for life.--The surviving spouse has a qualifying income interest for life if--

> > (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, * * * and

> > (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

Subclause (II) shall not apply to a power exercisable
only at or after the death of the surviving spouse.  To
the extent provided in regulations, an annuity shall be
treated in a manner similar to an income interest in
property (regardless of whether the property from which
the annuity is payable can be separately identified).

We concluded in Estate of Clayton v. Commissioner, supra, that, when the surviving spouse's income interest in the property is contingent upon the executor's making a QTIP election, the executor possesses the ability to control and to direct the assets to someone other than the surviving spouse.  We held that the executor's ability to control and direct the assets was tantamount to a power to appoint the property to someone other than the surviving spouse.  The statute expressly provides that no person can have the power to appoint the property to anyone other than the surviving spouse.  Sec. 2056(b)(7)(B)(ii)(II). The only exception to that prohibition is that it "shall not apply to a power exercisable only at or after the death of the surviving spouse."  Sec. 2056(b)(7)(B)(ii)(II) (flush language). Congress did not include within that exception a power exercisable by the executor or a power exercisable prior to the executor's making the election on the estate tax return.

I see no distinction between the situation in which the executor is given such power during the period prior to the filing of the estate tax return and the situation in which an individual who is not the executor is given such power during that period.  The testator's coupling the power with the

executor's making of the QTIP election does not diminish the power.

The Court of Appeals for the Fifth Circuit attempts to circumvent the prohibition against the executor's having such a power during the period prior to making the election by applying a relation-back legal fiction. The Fifth Circuit stated:

> although the effect of the election is tested as of the instant of the testator's death, the definitional eligibility of the separate terminable interest under examination is tested as though QTIP election had already been made.

Estate of Clayton v. Commissioner, 976 F.2d at 1497. "The question is not when those determinations are made or when those acts are performed but whether their effects relate back, ab initio, to the moment of death." Id. at 1498. "[L]ike other estate tax elections (and other exceptions to the terminable interest rules), the effect of the QTIP election is retroactive to the instant of death, irrespective of when it is actually made." Id. at 1495. Thus, the Fifth Circuit ignores the power of appointment vested in the executor during the period from the date of the decedent's death to the date of making of the election by creating a "relation-back" legal fiction.

The Court of Appeals for the Fifth Circuit likened the QTIP election to a qualified disclaimer by the surviving spouse and stated:

> For example, a qualified disclaimer by the Surviving Spouse has precisely the effect of the QTIP election here: Both are volitional acts; both can be made only after the death of the testator; both relate back, ab

<u>initio</u>, to the date of death of the testator; and both have the effect of causing estate property which would otherwise pass to the Surviving Spouse to pass instead directly to or for the benefit of other parties.  * * *

<u>Id.</u> at 1498.  However, the point there, and in the present case, is that, absent the executor's election, the property is not "estate property which would otherwise pass to the Surviving Spouse".

In the case of qualified disclaimers, moreover, section 2518 specifically provides that

if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person.

Thus, the statute specifically mandates the relation-back effect of a qualified disclaimer.  There is no such statutory provision applicable to an executor's power to appoint property away from the surviving spouse coupled with the power to make a QTIP election.  Furthermore, section 2056(b)(7)(B)(ii)(II) (and flush language) specifically precludes applying this relation-back fiction to the power to appoint the property to someone other than the surviving spouse by specifically prohibiting <u>anyone</u> from having such a power at <u>any</u> <u>time</u> prior to the death of the surviving spouse.  I think the Court of Appeals for the Fifth Circuit's judicially created exception is contrary to the express language of the statute.

The only means of ignoring an executor's power to appoint the property to someone other than the surviving spouse

(exercisable by the executor's not making the QTIP election) would be to adopt the test applied by the Court of Appeals for the Sixth Circuit in Estate of Spencer v. Commissioner, 43 F.3d 226 (6th Cir. 1995), revg. T.C. Memo. 1992-579, that the date for determining whether property qualifies is the date the QTIP election is made.

However, the holding of the Court of Appeals for the Sixth Circuit, if pursued to its logical conclusion, would prohibit QTIP treatment for any qualifying income interest granted to a surviving spouse if the surviving spouse dies prior to the executor's making the QTIP election. In such a situation, if the date for determining whether property qualifies as QTIP is the date the election is made, then the executor of the first spouse to die cannot make the election to treat any property interest as QTIP. This is because, at the time the executor makes the election, the surviving spouse has died and no longer has any interest in the property; the property has passed to the remainder interest. In that situation, at the time the executor makes the election, the surviving spouse does not have a qualifying income interest for life, and the second essential element for QTIP treatment cannot be met. In such situation, the spouses could lose the benefit of the surviving spouse's unified credit.[1] I do not think that the date of making the election is

---

[1] For example, assume husband is the first to die and leaves wife a qualifying income interest in his entire estate, which estate is valued at $1.2 million. Assume further that wife dies
(continued...)

the proper date for determining whether the surviving spouse has a qualifying income interest for life in the property.

I agree that the election under section 2056(b)(7)(B)(v), like any other election that an executor makes under the estate tax provisions, must be made after the date of death of the decedent. However, I think the election can be made only as to an otherwise qualifying income interest in the property and that the election itself cannot qualify otherwise nonqualifying property. The definition of an interest in property in section 2056(b)(7)(B)(iii), the definition of a specific portion of property in section 2056(b)(7)(B)(iv), and the phrase "any property" in the definition of an election in section 2056(b)(7)(B)(v) do not change that result. Whatever the nature of the property, whatever the interest in the property, or whatever the specific portion of the property, the statute requires the surviving spouse to have a "qualifying income interest for life" in that "property".

---

(...continued)
8 months after husband and her income interest in husband's estate is the only property in which she has any interest. If the executor of husband's estate files the estate tax return before wife dies and elects on the return to treat one-half of the property as QTIP, husband's estate will get a marital deduction for $600,000 leaving $600,000 in his estate. Wife's estate will include the $600,000 QTIP property. Neither estate will be subject to tax (sheltered by husband's and wife's respective unified credit). If, on the other hand, husband's executor does not file the estate tax return until after wife's death, no QTIP election may be made, $600,000 of husband's estate is taxable, and wife's unified credit is wasted.

The term "property * * * to which an election under this paragraph applies" under section 2056(b)(7)(B)(i)(III) means something different from property for which an election "has been made". I think the term refers to property that meets the two preceding requirements; namely, property "which passes from the decedent" (sec. 2056(b)(7)(B)(i)(I)) and property "in which the surviving spouse has a qualifying income interest for life" (sec. 2056(b)(7)(B)(i)(II)). I think the surviving spouse must first have a qualifying income interest for life in the property before the executor can make the QTIP election as to all or any part of that property.

The Court of Appeals for the Fifth Circuit held that the requirement that the property be an interest to which an election under this paragraph applies is satisfied if "the property being tested for eligibility is the same property to which the election made by the * * * [executor] applies." Estate of Clayton v. Commissioner, 976 F.2d at 1496. In reversing this Court, however, the Fifth Circuit stated:

> the Tax Court insist[s] that the "property" here under examination is the entire residue of testator's estate, being the maximum amount of property and interests in property with which * * * [the marital trust] could be funded were a total QTIP election to be made. * * *

Id.[2]  With all due respect to the Court of Appeals for the Fifth

Circuit, I think that statement mischaracterizes the focus of

this Court.  Contrary to such characterization, this Court

applies the standard espoused by the Fifth Circuit; the property

being tested for QTIP eligibility is the same property to which

the election made by the executor applies.

During the period from the testator's death to the time of

making the election, the executor possessed the power to appoint

the property for which the election was made to someone other

than the surviving spouse.  The fact that the executor made the

election and, thus, did not in fact appoint the property to

someone other than the surviving spouse does not negate the fact

that, prior to making the election, the executor had the power to

appoint the property to someone other than the surviving spouse.

---

[2]  The Court of Appeals for the Fifth Circuit also focused on
this Court's language that the executor has the power to direct
the assets of Trust B (marital trust) to Trust A (children's
trust).  The Fifth Circuit stated:

> First, the QTIP election cannot vest the executor with
> control over "trust assets" before they become trust
> assets!  The undivided interests in the * * *
> [property] for which the election is made are estate
> assets but they do not become trust assets until the
> trust is funded, even though the economic effect of
> funding is retroactive to the instant of death.  Assets
> used to fund each testamentary trust get there by
> virtue of the provisions of the Will and the
> administration of the estate.  * * *

Estate of Clayton v. Commissioner, 976 F.2d 1486, 1499 (5th Cir.
1992), revg. 97 T.C. 327 (1991).  I agree that the assets of the
estate are the proper focus of the determination.  It is those
assets, however, over which the executor had the prohibited
power.

With all due respect to the Court of Appeals for the Fifth Circuit, I do not think that this Court's Estate of Clayton opinion turned on the fact that the executor made a partial election as opposed to a full election. This Court's opinions in Estate of Robertson and Estate of Spencer and indeed the present case involve a full election. Nor can policy concerns about eliminating the need for testators to risk predicting the future and providing flexibility and opportunity for post mortem estate planning provide a principled basis for disregarding the language actually used by Congress in section 2056(b)(7).

I do not think that, by requiring the executor to make the election for QTIP treatment, Congress intended to permit such expansive post mortem estate planning. Congress intended that the executor have the ability to determine whether property in which the testator grants the surviving spouse a qualifying income interest for life should be taxed in the estate of the first to die or, to the extent not consumed or earlier disposed of by the surviving spouse, in the estate of the surviving spouse. Additionally, Congress provided for a partial election in order to permit the executor to elect to have a portion of such otherwise qualifying property taxed in the estate of each spouse. In the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, Congress had already liberalized the marital deduction provisions, allowing an unlimited estate tax marital deduction and an unlimited gift tax marital deduction. The QTIP

provisions for estate tax (section 2056(b)(7)) and the QTIP provisions for gift tax (section 2523(f)) were designed to permit a decedent (or donor spouse) to make a lifetime gift or a testamentary bequest to his spouse of an income interest for life in property but still control the disposition of that property at the death of the surviving spouse or donee spouse.  Congress did not intend to vest the executor with the power to determine the disposition of the decedent's property; i.e., whether the surviving spouse would ultimately receive a qualifying income interest for life in the property or whether some other heir or heirs would receive that interest.  To the contrary, the legislative history makes clear that "tax consequences should not control an individual's disposition of property."  H. Rept. 97-201, at 160 (1981), 1981-2 C.B. 352, 378.

In summary, I think this Court was right in its analysis of the QTIP provisions in its Clayton-Robertson-Spencer opinions; the Court of Appeals opinions are inconsistent as to when the surviving spouse's "qualifying income interest for life" in property is to be determined and whether the surviving spouse must have a qualifying income interest for life in property separate and apart from and independent of the fact that the executor ultimately makes a QTIP election.  For these reasons, I think this Court should not, in the majority's words, "accede to the decisions of the Courts of Appeals that have reversed our decisions on the issue before us".  Majority op. p. 16.  This

Court should not so accede, particularly without any analysis of those circuit decisions and without some explanation as to why we are departing from our prior decisions.  Although this Court is only a trial court, it is a trial court with national jurisdiction.  The tax bar, the Internal Revenue Service, and the taxpayers, particularly those residing in the other nine circuits to which Tax Court decisions can be appealed, are entitled to a reasoned, principled explanation of our change of position.  The majority not only declines to address the differences in our analyses in our prior cases and those of the Courts of Appeals that have reversed us, but throws out a hint that the result might be different under the recently published regulations, which are effective for the estates of decedents dying after March 1, 1994.  Sec. 20.2056(b)-7(d)(3), Estate Tax Regs.  This Court's prior decisions are consistent with and support the validity of those regulations.

## II
## Venue Issue

This is an appropriate case in which to continue to follow our prior opinions since, under the Tax Court's special venue statute, any appeal would lie to the U.S. Court of Appeals for the Seventh Circuit, which has not yet addressed this particular QTIP issue.

Although the reviewing court will undoubtedly make its own determination, I think it is appropriate for this Court to address the issue of venue.  Brewin v. Commissioner, 72 T.C.

1055, 1059 (1979), revd. and remanded on another issue 639 F.2d

805 (D.C. Cir. 1981).[3]  This venue issue arises under a specific

Internal Revenue Code provision applicable only to the Tax Court

and appears to be an issue of first impression.

Section 7482(b)(1) provides with respect to review of

decisions of the Tax Court:

> SEC. 7482(b).  Venue.--
>
> (1) In General.--Except as otherwise provided in paragraphs (2) and (3), such decisions may be reviewed by the United States court of appeals for the circuit in which is located--
>
> > (A) in the case of a petitioner seeking redetermination of tax liability other than a corporation, the legal residence of the petitioner,
> >
> > (B) in the case of a corporation seeking redetermination of tax liability, the principal place of business or principal office or agency of the corporation, or, if it has no principal place of business or principal office or agency in any judicial circuit, then the office to which was made the return of the tax in respect of which the liability arises,
> >
> > (C) in the case of a person seeking a declaratory decision under section 7476, the principal place of business, or principal office or agency of the employer,
> >
> > (D) in the case of an organization seeking a declaratory decision under section 7428, the principal office or agency of the organization, or
> >
> > (E) in the case of a petition under section 6226 or 6228(a), the principal place of business of the partnership.
>
> If for any reason no subparagraph of the preceding sentence applies, then such decisions may be reviewed by the Court of

---

[3]  See also Peat Oil & Gas Associates v. Commissioner, T.C. Memo. 1993-130, appeal dismissed without published opinion for improper venue 12 F.3d 214 (6th Cir. 1993).

Appeals for the District of Columbia.  For purposes of this paragraph, the legal residence, principal place of business, or principal office or agency referred to herein shall be determined as of the time the petition seeking redetermination of tax liability was filed with the Tax Court or as of the time the petition seeking a declaratory decision under section 7428 or 7476, or the petition under section 6226 or 6228(a), was filed with the Tax Court.

Section 7482(b)(1)(A) and (B) is the relevant provision for this venue inquiry.

In estate tax cases in the Tax Court, sometimes the estate is referred to as the petitioner and sometimes the executor is referred to as the petitioner.[4]  However, this Court has never squarely addressed whether the estate or the executor is the petitioner or the real party in interest, or, stated another way, whether the residence (or principal place of business) of the executor at the time the petition is filed, or the residence of the decedent at the time of his death, is determinative for purposes of venue under section 7482(b)(1).  That issue does not turn upon how a case is captioned in this Court.[5]  Cf. Estate of

---

[4]  That sec. 7482(b)(1)(A) uses the term "petitioner" rather than "taxpayer" is not particularly relevant to our inquiry.  Various provisions of the Internal Revenue Code refer to "the taxpayer" whether in the context of deficiency cases in the Tax Court (sec. 6212--notice of deficiency; sec. 6213--restrictions applicable to deficiencies; petition to Tax Court) or in the context of tax refund cases in the U.S. District Courts (sec. 7422--civil actions for refund).  However, when it comes to venue provisions, sec. 7482(b)(1)(A) uses the term "petitioner" for the party filing a deficiency case in the Tax Court, and 28 U.S.C. sec. 1402(a)(1) (1994) uses the term "plaintiff" for the party filing a tax refund suit.

[5]  Rule 23(a)(1) provides that "The name of an estate or trust or other person for whom a fiduciary acts shall precede the fiduciary's name and title, as for example 'Estate of Mary Doe,
(continued...)

Turner v. Helvering, 68 F.2d 759, 760 (D.C. Cir. 1934).  That

issue does not turn upon how the capacity of fiduciaries or other

representatives to litigate in this Court is to be determined.[6]

No issue has been raised in this Court as to the capacity of

Richard E. Clack and the Marshall & Isley Trust Co. to litigate

in this Court.  Their capacity to litigate in this Court is to be

determined, and presumably has been determined, under Arkansas

law.[7]  In any event, their capacity to litigate in the Tax Court

does not mean that the State that appointed them determines the

proper venue for any appeal from a decision of this Court.  See

---

(...continued)
deceased, Richard Roe, Executor.'"

[6]  Rule 60(c) provides that "The capacity of a fiduciary or other
representative to litigate in the Court shall be determined in
accordance with the law of the jurisdiction from which such
person's authority is derived."

[7]  The Probate Court of Benton County, Arkansas, issued letters
testamentary to Richard E. Clack and the Marshall & Isley Trust
Co., authorizing them to act as coexecutors of decedent's estate.
That Mr. Clack is a resident of Wisconsin and that the Trust
Company has its principal place of business in Wisconsin did not
disqualify them to be authorized to act as coexecutors of
dececent's estate and hence authorized to represent decedent's
estate and litigate in this Court.

Under Arkansas law, a nonresident natural person is
authorized to act as executor so long as an in-state agent is
appointed for service of process.  Ark. Code Ann. secs. 28-48-
101(a), 28-48-101(b)(6) (Michie 1987).  Under Arkansas law, a
foreign corporation is not disqualified to act as a fiduciary so
long as its home jurisdiction (here Wisconsin) grants
authorization to Arkansas companies to act in a similar capacity.
Ark. Code Ann. secs. 28-48-101(a), 28-48-101(b)(4) (Michie 1987);
Ark. Code Ann. sec. 4-27-203 (Michie 1987).  Wisconsin law
essentially tracks that of Arkansas in this regard.  Wis. Stat.
Ann. secs. 856.21, 856.23 (West 1991); sec. 223.12(1), (4) (West
1957 & Supp. 1981).

Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 186, 190 (1931) (venue in Federal diversity case); Buchheit v. United Air Lines, Inc., 202 F. Supp. 811 (S.D.N.Y. 1962) (venue under Federal Tort Claims Act). These venue cases suggest that the personal residence of an executor or administrator is controlling, and that the residence of the decedent at the time of his death and the place of appointment of the executor or administrator are immaterial.

Petitioner does not dispute that the "legal residences" of the coexecutors determine the proper venue for an appeal in this case. Rather, petitioner argues that because decedent was domiciled in Arkansas at the time of his death, the coexecutors should be deemed to reside in Arkansas. Petitioner suggests that the standard applied for establishing diversity jurisdiction of Federal courts under 28 U.S.C. sec. 1332 (1994) and removal under 28 U.S.C. sec. 1441 (1994) should apply for purposes of determining venue under section 7482(b)(1). Petitioner argues that "In the related field of diversity jurisdiction, courts have demonstrated a willingness to look behind the individual residence of the executor when determining the citizenship of parties." The Judicial Improvements and Access to Justice Act of 1988, Pub. L. 100-702, sec. 202(a), 102 Stat. 4646, added 28 U.S.C. sec. 1332(c), which provides:

> (c) For the purposes of this section and section 1441
> of this title--

                    *    *    *    *    *    *    *

(2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

As acknowledged by petitioner, 28 U.S.C. sec. 1332, by its express terms, applies only to that section and to 28 U.S.C. sec. 1441. This provision does not mention the Tax Court's venue statute, which had been in the law for 22 years at that time. I think that this 1988 provision "overrules" neither the cases on which I rely nor this Court's specific venue statute.

Proper venue in a Federal tax case is a question of Federal law and is to be determined by examining the Federal venue provisions, any relevant legislative history, and any case law construing them. I have not found any case construing section 7482(b)(1). Accordingly, I look to the various predecessor venue statutes for this Court leading up to the present section 7482(b)(1), the reasons for adoption of section 7482(b)(1), and any cases construing similar provisions in Federal tax refund cases.

The Board of Tax Appeals, the predecessor of this Court, was established in 1924. Revenue Act of 1924, ch. 234, sec. 900, 43 Stat. 253, 336. Two years later the law was expanded to provide appellate review by a Circuit Court of Appeals or the Court of Appeals for the District of Columbia. Revenue Act of 1926, ch. 27, sec. 1001, 44 Stat. 9, 109. Venue for such appeals was set forth in section 1002 of the Revenue Act of 1926. Section

1002(a) of the act provided review for "an individual" by the circuit "whereof he is an inhabitant". Section 1002(b) of the act provided review for "a person (other than an individual)" by the circuit in which is located the office of the collector where the tax return was filed. The term "person (other than an individual)" was defined to include an estate. See Ayer v. Commissioner, 63 F.2d 231 (2d Cir. 1933), dismissing appeal from 26 B.T.A. 9 (1932). Because of the definition of "person (other than an individual)" to include an estate and confusion as to where returns were to be filed,[8] the cases construing section 1002 of the Revenue Act of 1926 are not on point or particularly helpful in the present inquiry. See Estate of Turner v. Helvering, 68 F.2d 759 (D.C. Cir. 1934); Ayer v. Commissioner, supra; Matheson v. Commissioner, 54 F.2d 537 (2d Cir. 1931), affg. 18 B.T.A. 674 (1930); Rusk v. Commissioner, 53 F.2d 428 (7th Cir. 1931), affg. 20 B.T.A. 138 (1930).

In 1934 the venue provision for the Board of Tax Appeals was changed to make venue depend entirely upon where the tax return was filed. Section 519 of the Revenue Act of 1934, ch. 277, 48 Stat. 680, 760, amended section 1002 of the Revenue Act of 1926 to read as follows:

---

[8]  The estate income tax return was filed with the office of the collector for the district where the fiduciary resided; the estate tax return was filed in the office of the collector for the district where the decedent resided at the time of his death. Revenue Act of 1924, ch. 234, secs. 225(b), 300, 304, 43 Stat. 253, 280, 303, 307.

(a) Except as provided in subdivision (b), such decision may be reviewed by the Circuit Court of Appeals for the circuit in which is located the collector's office to which was made the return of the tax in respect of which the liability arises or, if no return was made, then by the Court of Appeals of the District of Columbia.

(b) Notwithstanding the provisions of subsection (a), such decision may be reviewed by any Circuit Court of Appeals, or the Court of Appeals of the District of Columbia, which may be designated by the Commissioner and the taxpayer by stipulation in writing.

That version of the venue statute making venue, absent a stipulation to the contrary, depend entirely upon where the tax return was filed became section 1141(b) of the 1939 Internal Revenue Code and then substantially unchanged became section 7482 of the 1954 Internal Revenue Code. In the meantime the Board of Tax Appeals became the Tax Court of the United States and then the United States Tax Court. That 1934 provision remained the venue statute for appeal from Tax Court decisions until the current version of section 7482(b)(1) was enacted in 1966.

In connection with the Internal Revenue Service's then conversion from manual to automatic data processing of tax returns, the Act of Nov. 2, 1966, provided for tax returns to be filed with Internal Revenue Service Centers rather than with the offices of the collectors. The 1966 Act abolished all tax refund suits against collectors, retaining only tax refund suits against the United States in U.S. District Courts or in the U.S. Court of Claims (later Claims Court and now Court of Federal Claims). The 1966 Act made significant changes in the Tax Court's venue statute. Pub. L. 89-713, sec. 3(c), 80 Stat. 1107, 1109.

As amended in 1966 to its current form, section 7482(b)(1) was part of a change in venue for both criminal tax and Tax Court cases. The general purpose of the change was to better disperse the appeals among the various circuits and to model venue for Tax Court appeals after the provision of existing law prescribing venue for tax refund suits in the U.S. District Courts. S. Rept. 1625, 89th Cong. 2d Sess. (1966), 1966-2 C.B. 803, 808.

So what is the proper venue for tax refund suits after which the Tax Court's venue statute is modeled? Section 1346(a)(1) of title 28 places original jurisdiction in the U.S. District Courts or the U.S. Court of Federal Claims for any suit against the United States for refund of Federal taxes.[9] Section 1402(a)(1) of title 28 provides that proper venue for such a suit is only in the judicial district in which the individual "plaintiff" resides.[10] Section 1402(a)(2) of title 28 provides that venue

---

[9] 28 U.S.C. sec. 1346(a)(1) (1994) provides:

(a) The district courts shall have original jurisdiction concurrent with the United States Court of Federal Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

[10] 28 U.S.C. sec. 1402(a) (1994) provides:

(a) Any civil action in a district court against the United States under subsection (a) of section 1346 of this title may be prosecuted only:

(1) Except as provided in paragraph (2), in
(continued...)

for a corporate plaintiff is the judicial district in which is located its principal place of business or principal office or agency. In the present case the individual executor resides in Wisconsin, and the corporate executor has its principal place of business in Wisconsin.

Suits for refund of Federal taxes may be brought only against the United States, and if the plaintiff is an individual, venue is proper only in the judicial district where that individual resides. Caleshu v. Wangelin, 549 F.2d 93 (8th Cir. 1977); Scott v. United States, 449 F.2d 1291 (8th Cir. 1971); Noonis v. United States, 539 F. Supp. 404 (S.D. Cal. 1982). And if the plaintiff is an individual, the venue may not be transferred to another judicial district, even though the events

(...continued)
the judicial district where the plaintiff resides;

(2) In the case of a civil action by a corporation under paragraph (1) of subsection (a) of section 1346, in the judicial district in which is located the principal place of business or principal office or agency of the corporation; or if it has no principal place of business or principal office or agency in any judicial district (A) in the judicial district in which is located the office to which was made the return of the tax in respect of which the claim is made, or (B) if no return was made, in the judicial district in which lies the District of Columbia. Notwithstanding the foregoing provisions of this paragraph a district court, for the convenience of the parties and witnesses, in the interest of justice, may transfer any such action to any other district or division.

We note that the transfer provision of the last sentence of 28 U.S.C. sec. 1402(a)(2) applies only to corporations. Caleshu v. Wangelin, 549 F.2d 93, 95 (8th Cir. 1977).

occurred in another state and even though most of the records are in the other state.  Caleshu v. Wangelin, supra at 95-96 and n.4.

For a refund of Federal estate taxes, the executor is the proper person to bring the refund suit.  Hofheinz v. United States, 511 F.2d 661 (5th Cir. 1975).  The Court of Appeals for the Fifth Circuit pointed out that the executor actually paid the estate tax (sec. 2002) and was the proper plaintiff-taxpayer for purposes of the refund suit.  Similarly, the proper venue for a suit brought by an executor for refund of estate taxes is the judicial district where the executor resides.  Kruskal v. United States, 178 F.2d 738 (2d Cir. 1950).

In the Kruskal case the executors of the estate were residents of New York.  At the time of the decedent's death, he was a resident of Connecticut.  The letters testamentary were issued to the executors by the Probate Court for the District of Roxbury, Connecticut, the district of last residence of the decedent.  Without obtaining ancillary letters in New York, the executors sued in the U.S. District Court for the Southern District of New York to recover the Federal estate tax they had paid.  The Government moved to dismiss on the ground that venue would be only in the District Court for Connecticut and on the further ground that capacity to sue under rule 17(b) of the Federal Rule of Civil Procedure depended on New York law, and that New York law did not permit foreign executors to sue in the courts of New York in a representative capacity.  The District

Court for the Southern District of New York did not address the first ground but granted the motion on the basis of the executors' lack of capacity to sue under New York law.  The Court of Appeals for the Second Circuit reversed the lower court, upholding venue in New York and disagreeing with the argument as to the lack of ancillary letters.

As to the lack of ancillary letters in New York, the Court of Appeals for the Second Circuit held that

> the claim of the executors is technically in their own right, for it is to recover monies which they paid and to right an error which they, under governmental compulsion, committed.  Wherever the transaction giving rise to a right of recovery occurs after the death of a testator, suit to enforce the right must be brought by the executors as individuals, rather than as representatives.  * * *

Kruskal v. United States, 178 F.2d at 740.

The Court of Appeals for the Second Circuit also concluded that proper venue was in the Southern District of New York where the executors resided.  Citing 28 U.S.C. sec. 1402(a) that refund suits may be prosecuted only in the judicial district where the plaintiff resides, the court stated:

> Since there is nothing to suggest departure from the usual rule that residence of the individual plaintiffs, rather than the situs of their estate, controls questions of federal jurisdiction, Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, * * *; Greenough v. Tax Assessors of City of Newport, 331 U.S. 486, 495, * * *, we think the plaintiffs have chosen the correct venue for their action.  * * *

Id. at 739.

In summary, I have found few cases addressing venue for tax refund suits and none addressing venue for appeal of a Tax Court decision in an estate tax case. However, the above review of the venue statute, its legislative history, and cases involving tax refund suits leads me to the conclusion that the residence of the executor (or the principal place of business in the case of a corporate executor) is controlling under section 7482(b)(1).

I conclude that an appeal in this case would properly lie to the Court of Appeals for the Seventh Circuit. Therefore, I think this Court is not bound by the Golsen rule to follow the opinion of the Court of Appeals for the Eighth Circuit in Estate of Robertson v. Commissioner, supra, on the QTIP issue in this case.

COHEN, J., agrees with this dissent.

HALPERN, <u>J.</u>, dissenting:  I cannot join the majority's opinion for the following reasons.

I.  <u>Our Obligation as a Court of National Jurisdiction Is To Decide This Case as We Think Is Right</u>

Three strikes and you're out!  Is that the new rule?  According to the majority:  "Suffice it to say that, in light of the reversals of this Court's decisions by three different circuits, we now decide that we will accede to the result in those appellate decisions".  Majority op. p. 16.  Finding it unnecessary "to winnow out the differences in our analyses in our prior cases and those of the Courts of Appeals that have reversed us", <u>id.</u>, and seeing "no reason in the instant case to adopt either the rationale of the Fifth and Eighth Circuits, on the one hand, or of the Sixth Circuit, on the other", <u>id.</u>, and with no further analysis than that, the majority overrules a result that we reached on three separate occasions and which, by virtue of our role as a trial court of national jurisdiction, governed us in cases appealable to 9 out of the 12 Courts of Appeals.

A judge is supposed to reach his or her opinion by a process of "reasoned elaboration", striving to reach what <u>he</u> (or she) thinks is <u>the</u> right result.[1]  Because we are a court of national jurisdiction, we face unique problems in dealing with the opinions of the various Courts of Appeals.  In <u>Central Pa. Sav.</u>

---

[1]  Hart & Sacks, The Legal Process:  Basic Problems in the Making and Application of Law 143-152, in particular 149-150 (1994); Schauer, "Opinions as Rules", 62 U. Chi. L. Rev. 1455, 1465 (1995).

<u>Association v. Commissioner</u>, 104 T.C. 384, 406 (1995) (Halpern,

<u>J.</u>, dissenting), I described how we have resolved those problems:

> We are a Court of national jurisdiction with expertise in the area of Federal taxes. Since appeals from this Court lie to each of the 12 Courts of Appeals, we face unique problems in dealing with the opinions of Circuit Courts. See, e.g., <u>Lawrence v. Commissioner</u>, 27 T.C. 713 (1957), revd. 258 F.2d 562 (9th Cir. 1958); <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971); <u>Lardas v. Commissioner</u>, 99 T.C. 490 (1992). We have, since <u>Lawrence</u>, backed off from the position taken therein, that, while certainly we should seriously consider the reasoning of a Court of Appeals that had reversed one of our decisions, we ought not to follow the Court of Appeals' decision if we believe it to be incorrect:
>
> > if still of the opinion that its original result was right, a court of national jurisdiction to avoid confusion should follow its own honest beliefs until the Supreme Court decides the point. The Tax Court early concluded that it should decide all cases as it thought right. [<u>Lawrence v. Commissioner</u>, <u>supra</u> at 716-717; fn. refs. omitted.]
>
> We have backed off to the extent that, in <u>Golsen v. Commissioner</u>, <u>supra</u>, we created a narrow exception to the <u>Lawrence</u> doctrine. Where a reversal would appear inevitable, due to the clearly established position of the Court of Appeals to which an appeal would lie, our obligation as a national Court does not require a futile and wasteful insistence on our view. <u>Golsen v. Commissioner</u>, 54 T.C. 742, 757. Accordingly, in that narrow circumstance, although we still think the result wrong, we will follow that Court of Appeals. Compare <u>Golsen v. Commissioner</u>, <u>supra</u> (<u>Golsen</u> doctrine established), with <u>Lardas v. Commissioner</u>, <u>supra</u> (<u>Golsen</u> doctrine inapplicable). * * *
>
> The majority finds the <u>Golsen</u> doctrine inapplicable.

Majority op. p. 16. Nevertheless, today we overrule three of our

prior decisions with the only apparent justification being that

three Courts of Appeals disagree with us.  Are we persuaded by the reasoning of one or more of those Courts of Appeals or have we today adopted a new exception to the Lawrence doctrine, that when we have been overruled three times we will throw in the towel?  Because we are a trial court of national jurisdiction, we enjoy an autonomy not enjoyed generally by Federal trial courts.  Because I am jealous of that autonomy, I would be slow to give it up.  As set forth in the next section of this opinion, I think that we reached the right conclusion in Estate of Clayton v. Commissioner, 97 T.C. 327 (1991), revd. 976 F.2d 1486 (5th Cir. 1992), Estate of Robertson v. Commissioner, 98 T.C. 678 (1992), revd. 15 F.3d 779 (8th Cir. 1994), and Estate of Spencer v. Commissioner, T.C. Memo. 1992-579, revd. 43 F.3d 226 (6th Cir. 1995).  I would follow those decisions.

II.  Qualified Terminable Interest Property

A.  Introduction--Section 2056(b)(7) Is Unambiguous

We must determine whether the property passing from the decedent to the marital trust is "qualified terminal interest property", as that term is used in section 2056(b)(7)(B)(i).  If it is not, then such property does not qualify for the marital deduction provided for in section 2056(a).  The distinguishing feature of the decedent's bequest to the marital trust is that it is conditional on the decedent's personal representative's electing to have section 2056(b)(7)(A) apply.  If no election is made, the marital trust receives nothing.  If an election is

made, but it is with respect to less than all of the property eligible to pass to the marital trust, then only such lesser portion passes to the marital trust. Property eligible to pass to the marital trust, but with respect to which no election is made, remains in the residue of the estate and funds the family trust. Because the decedent's wife has no exclusive right for life to any portion of the income of the family trust, she does not have a qualified income interest for life in that trust. Sec. 2056(b)(7)(B)(ii). Thus, property passing to the family trust cannot qualify as qualified terminable interest property under section 2056(b)(7)(B)(i).

The authority vested by the decedent in his personal representative to elect whether to have section 2056(b)(7)(A) apply determines more than simply the tax consequences of a predetermined bequest. As between two classes of possible trust beneficiaries--one class being the beneficiaries of the marital trust (principally, the decedent's wife, with an income interest and a limited right to principal), and the other class being the beneficiaries of the family trust (the decedent's wife, children, and the children of any deceased children, with rights to both income and principal)--the personal representative has the authority to determine which class immediately will enjoy (i.e., which trust will receive) the property. The personal representative's authority thus amounts to a power to appoint the property between the two trusts, and the decedent's wife's

interest in the property is contingent on the personal representative exercising the power in her favor. That is a clear violation of section 2056(b)(7)(B)(ii)(II) (with an exception not here relevant, "no person has a power to appoint any part of the property to any person other than the surviving spouse."). The statute is unambiguous. Indeed, section 2056(b)(7)(B)(ii) specifically provides that the prohibition on powers is <u>inapplicable</u> to a power exercisable <u>only at or after</u> the death of the surviving spouse. By the terms of his will or by a power, a decedent <u>can</u> control the disposition of qualified terminable interest property <u>upon the death</u> of the surviving spouse. By requiring an election, section 2056(b)(7)(B)(i)(III) makes it clear that the executor of the estate or other personal representative of the decedent (hereafter, in either case, personal representative) <u>can</u> choose whether to take tax advantage of an otherwise qualifying bequest or devise of terminable interest property. The decedent <u>cannot</u>, however, empower his personal representative to deprive the spouse of what would be a qualified income interest for life by, for example, appointing the property to a trust in which she does not enjoy all of the income from the property for life. Simply, such a power is prohibited by section 2056(b)(7)(B)(ii)(II).

I do not consider section 2056(b)(7) to be ambiguous. Even if one were to consider the section ambiguous, however, so that a search for extrinsic evidence of congressional purpose were

appropriate, I am unpersuaded that, in enacting section 2056(b)(7), Congress' purpose was to exempt from the terminable interest rule a bequest or devise that is uncertain (as to whether the surviving spouse has a qualifying income interest for life) at the time of the decedent's death. The relevant committee reports are silent, and the general rule of section 2056(b) is to the contrary. On that basis, even assuming ambiguity, I would hold for respondent.

B. <u>Committee Reports Are Silent</u>

Section 2056(b)(7) was added to the Code by the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, sec. 403(d), 95 Stat. 172, 302. H. Rept. 97-201 (H. Rept. 97-201), 1981-2 C.B. 352, is the report of the Committee on Ways and Means that accompanied H.R. 4242, 97th Cong., 1st Sess. (1981) (which was enacted as ERTA). In pertinent part, H. Rept. 97-201 details the reasons for an unlimited marital deduction (simplification and the view that an individual should be free to pass his entire estate to a surviving spouse free of tax). It then states:

> In addition, the committee believes that the present limitations on the nature of interests qualifying for the marital deduction should be liberalized to permit certain transfers of terminable interests to qualify for the marital deduction. Under present law, the marital deduction is available only with respect to property passing outright to the spouse or in specified forms which give the spouse control over the transferred property. Because the surviving spouse must be given control over the property, the decedent cannot insure that the spouse will subsequently pass the property to his children. Because the maximum marital deduction is limited under present law to one-half of the decedent's adjusted

gross estate, a decedent may at least control disposition of one-half of his estate and still maximize current tax benefits. However, unless certain interests which do not grant the spouse total control are eligible for the unlimited marital deduction, a decedent would be forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children. The committee believes that the tax laws should be neutral and that tax consequences should not control an individual's disposition of property. Accordingly, the committee believes that a deduction should be permitted for certain terminable interests.

H. Rept. 97-201, supra at 159-160, 1981-2 C.B. at 377-378; see H. Conf. Rept. 97-215, at 247 (1981), 1981-2 C.B. 481, 507 (conference agreement follows the House bill and Senate amendment).

Thus, Congress enacted section 2056(b)(7) in order to allow a decedent to enjoy the benefits of the marital deduction while, at the same time, exercising the type of control over the disposition of the property upon the termination of the surviving spouse's interest that would, under prior law, have violated the terminable interest rule. Clearly, by providing for an election, Congress' purpose also was to allow some post mortem tax planning. I cannot distill from the committee reports, however, any clear indication that Congress' purpose was anymore than to allow the decedent's personal representative to determine the tax consequence of a disposition that had been predetermined by the decedent. If Congress' purpose were any more than that, it seems to me that relevant committees would have stated that purpose. For me, the committee reports are silent on the issue before us.

C.  Internal Consistency

Section 2056(b) disallows the marital deduction with respect to certain terminable interests.  Section 2056(b) had its origin in section 361 of the Revenue Act of 1948, ch. 168, 62 Stat. 110, 117.  S. Rept. 1013, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 285 (S. Rept. 1013), is the report of the Committee on Finance that accompanied H.R. 4790, 80th Cong. 2d Sess. (1948) (which was enacted as the Revenue Act of 1948).  S. Rept. 1013 has the following to say about the operation of the terminable interest rule:

> [The terminable interest rule] is intended to be all-encompassing with respect to various kinds of contingencies and conditions.  Thus, it is immaterial whether the interest passing to the surviving spouse is considered as a vested interest subject to divestment or as a contingent interest.  * * *  [The terminable interest rule] applies whether the terms of the instrument or the theory of their application are conceived as creating a future interest which may fail to ripen or vest or as creating a present interest which may terminate.  * * *  [1948-1 C.B. at 336.]

The terminable interest rule has been interpreted as follows:

> Thus a terminable interest obviously may be either a contingent interest (i.e., where vesting is subject to a condition precedent) or a vested interest subject to defeasance (i.e., where a vested interest may be divested by the occurrence of a condition subsequent). The critical factor which defeats the deduction is the defeasibility of an interest which will cause it to pass from the decedent to a third person.  * * * [Emphasis added.]

Robertson v. United States, 199 F. Supp. 78, 80 (N.D. Ala. 1961), revd. 310 F.2d 199 (5th Cir. 1962).  Thus, for example, a

specific exception to the terminable interest rule is necessary to allow the decedent to make the interest of the surviving spouse conditional on surviving the decedent by 6 months or surviving a common disaster.  See sec. 2056(b)(3).  Other conditions of survival violate the terminable interest rule. See, e.g., sec. 20.2056(b)-3(d), Example (4), Estate Tax Regs. (condition of survival to date of distribution of property unacceptable).

In Jackson v. United States, 376 U.S. 503 (1964), the Supreme Court found that a State-law widow's allowance was a prohibited terminable interest.  The allowance was subject both to a condition precedent (award by a court) and defeasance (abatement upon the widow's death).  The Court stated that the rule uniformly followed is that qualification for the marital deduction must be determined at the time of death.  Id. at 508. Thus, consider the following hypothetical situation:  The decedent leaves the residue of his estate to his children, except to the extent that his personal representative lists any portion of the residue on the estate tax return as going to the wife.  On the authority of the Jackson case, a deduction under section 2056(a) would fail on account of the terminable interest exception for the portion of the residue going to the wife.

The general rule of section 2056(b) is that contingent interests are terminable interests.  The determination is made at the time of death.  Here, the decedent's wife's interest in the

marital trust property was contingent at the time of death.  Only if the decedent's personal representative elected to have section 2056(b)(7)(A) apply to property would it pass to the marital trust.  To be consistent with the general rule of section 2056(b), any ambiguity in section 2056(b)(7) must be resolved to prevent property in which the surviving spouse has only a contingent income interest from being qualified terminable interest property.

I recognize that it might make good policy sense to disregard the contingency here present:  If we did so, the property in question would, like any qualified terminable interest property, be deductible in computing the decedent's taxable estate but be includable in determining the surviving spouse's gross estate.  See secs. 2044, 2056.  If I were to consider section 2056(b)(7) in a vacuum (and if I believed that the provision were ambiguous), then I might reach that result.  I cannot, however, consider section 2056(b)(7) in a vacuum.  The terminable interest rule plays a major role in section 2056.  Without a specific direction from Congress to disregard the contingent nature of a surviving spouse's interest, we are not free to do so.  We would be wise to keep in mind what the Supreme Court said in the Jackson case (involving the widow's allowance):

> We are mindful that the general goal of the marital deduction provisions was to achieve uniformity of federal estate tax impact between those States with community property laws and those without them.  But the device of the marital deduction which Congress chose to achieve uniformity was knowingly hedged with

limitations, including the terminable-interest rule. These provisions may be imperfect devices to achieve the desired end, but they are the means which Congress chose. To the extent it was thought desirable to modify the rigors of the terminable-interest rule, exceptions to the rule were written into the Code. Courts should hesitate to provide still another exception by straying so far from the statutory language as to allow a marital deduction for the widow's allowance provided by the California statute. The achievement of the purposes of the marital deduction is dependent to a great degree upon the careful drafting of wills; we have no fear that our decision today will prevent either the full utilization of the marital deduction or the proper support of widows during the pendency of an estate proceeding.

Jackson v. United States, supra at 510 (fn. refs. omitted). We are not here concerned with the support of widows during the pendency of an estate tax proceeding. In H. Rept. 97-201, supra at 160, 1981-2 C.B. at 377-378, the Committee on Ways and Means expressed the specific concern that, as between the decedent and the spouse, the decedent be able to control the disposition of qualified terminable interest property on the conclusion of the spouse's life estate. I do not believe that our decisions in Estate of Clayton v. Commissioner, 97 T.C. 327 (1991), Estate of Robertson v. Commissioner, 98 T.C. 678 (1992), and Estate of Spencer v. Commissioner, T.C. Memo. 1992-579, are inconsistent with Congress' action to deal with that concern.

D.  The Proposed Regulation

Section 20.2056(b)-7(d)(3), Estate Tax Regs., takes a position consistent with the results we reached in the Estate of Clayton, Estate of Robertson, and Estate of Spencer cases. In that respect, section 20.2056(b)-7(d)(3), Estate Tax Regs., is

effective with respect to decedents dying after March 1, 1994. Sec. 20.2056(b)-10, Estate Tax Regs. The majority "[leaves] for another day the issue of the validity of that regulation." Majority op. p. 16. What is one to make of that statement? Can the majority possibly believe that section 2056(b)(7) is ambiguous and that both the position we take today and the position we took in the enumerated cases, and that the Commissioner takes in section 20.2056(b)-7(d)(3), Estate Tax Regs., are reasonable interpretations of the statute? Only if the statute is ambiguous is the Commissioner then free to write a regulation adopting any reasonable interpretation. NationsBank v. Variable Annuity Life Ins. Co., 513 U.S. ___, ___, 115 S. Ct. 810, 813-814 (1995); Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-844 (1984). No court, neither this Court nor any of the Courts of Appeals that have reversed us, has suggested any significant ambiguity in the statute, much less an ambiguity broad enough to tolerate the diametrically opposed readings found in our prior cases and in the case we decide today. Certainly, decedents whose estate tax cases might on appeal go to a Court of Appeals different than the three that have reversed us bear the risk that such court might find section 2056(b)(7) ambiguous. Also certainly, the Supreme Court might find section 2056(b)(7) ambiguous (or unambiguous, as interpreted by section 20.2056(b)-7(d)(3), Estate Tax Regs.). Can we seriously say, however, that there is a substantial risk

that <u>we</u> will find the statute ambiguous and, if so, that <u>both</u> the position we take today <u>and</u> the position we today abandon are reasonable interpretations?  If there is no such risk, and I believe that there is not, we should say so.  As I have said, we are a court of national jurisdiction with expertise in the area of Federal taxes.  What we say means something; it makes a difference.  We should explain ourselves, and strive to achieve the right result.

PARKER, <u>J</u>., agrees with this dissent.

CHIECHI, <u>Judge</u> dissenting:  I join in Judge Parker's dissent to the extent it addresses the QTIP issue.  However, in light of the majority's interpretation of section 2056(b)(7), I do not believe it necessary or appropriate to decide the venue issue that Judge Parker addresses in her dissent.  Accordingly, I do not join Judge Parker's dissent to the extent it considers that issue.